

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable H. L. Washburn
County Auditor
Harris County
Houston, Texas

Dear Sir:

Opinion No. O-1140

Re: Has the Harris County Naviga-
tion District the right to
furnish medical attention,
hospitalization, drugs, ambu-
lance service, and like serv-
ices to its employees in
addition to the salaries to
be paid in money for the
performance of their duties,
and related questions.

Your letter requesting an opinion of this department
concerning the questions stated therein reads as follows:

"The Harris County Navigation District
was established in 1911 under the provisions
of Chapter 9, Title 128, Articles 8198, et
sequente. Later, the provisions of Subdivi-
sion 2, Articles 8229, et sequente, passed
in 1921, became effective after an election
to determine whether or not said act should
be made effective had carried.

"The governing body authorized by Article
8235 was appointed and has continued the active
administration and operation of the Port under
said chapter and articles.

"It will be observed that under the provi-
sions of Article 8245 the Navigation Commis-
sioners are authorized to employ such persons
as they may deem necessary for the construc-
tion, maintenance, operation, and development

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

of the Navigation District, its business and
facilities, and are authorized to prescribe
their duties and fix their compensation.
Pursuant to this statutory authorization the
Navigation Commissioners from time to time
authorized the appointment and employment
of persons considered necessary to discharge
the duties of the positions created. Such
orders merely designate the position, the
name of the person appointed, and the salary
to be paid from the funds of the Navigation
District. Written contracts of employment
with certain exceptions not pertinent to
the questions hereinafter to be propounded
have not been used. The Director of the
Port, or the Superintendent, as the case
may be, has as a general rule merely named
certain persons to occupy certain positions
at specified rates, pursuant to definite
orders of the Navigation Commissioners set
out in the minutes, and this order and em-
ployment has constituted the contract of
employment. Such contracts do not embrace
any compensation other than the money for
which a specific rate is fixed.

"For some time past the Navigation Com-
missioners have authorized the making of
contracts by the District for hospital serv-
ices for its employees, for drugs, and for
medical attention. They have provided that,
under the direction of the physician so con-
tracted with, the employees shall receive
hospitalization, medical attention, and
medicines, and have included therein examina-
tions embracing X-ray pictures, examination
of eyes, furnishing of glasses, and many
similar items. Please bear in mind that
these contracts are made directly between
the District and the hospital, the doctor,
the drug store, and so forth, but that no
contract is made with the employees for such
medical attention at the time of the employ-
ment of persons to operate the District.
Such employment contracts merely indicate

the compensation to be paid in money.

"There has now arisen a custom whereby the employees apply for medical attention, hospitalization, or drugs, without previous direct arrangement with such employee, and such items are being furnished at the sole expense of the Navigation District in addition to the agreed compensation. Furthermore, the arrangements so made and the expenditures on behalf of such employees are made and incurred after the performance of services and without limitation of amount. I have endeavored locally to ascertain the correct principles of law to apply to this situation, it being my contention that if it be conceded the Navigation District has authority to make employments and fix the compensation for the services to be performed at a designated salary and may at that time enter into a contract with such employee to furnish him in addition thereto the medical attention referred to, certainly such District cannot lawfully make an employment and later furnish such additional items after the performance of services. I contend the District may at its option enter into a contract with its employees but such contract must fix the scope of such medical attention and hospitalization and definitely limit the amount, which limitation necessarily must be reasonable. This part of the contract of employment is in addition to that fixing the compensation in money.

"Claims for professional services, medical attention, hospitalization, ambulance service, nursing, and like services for the past twelve months have approximated $4,000 with prospects for increases.

"The matter has, therefore, assumed proportions of importance, and I desire to present for your consideration the following questions:

"1. Has the Harris County Navigation District the right to furnish medical attention, hospitalization, drugs, ambulance service, and like services to its employees in addition to salaries to be paid in money for the performance of their duties?

"2. If the Harris County Navigation District has such right, must the designation of salaries and provisions for such medical and other attention (services) be made in advance of or at the time of the employment?

"3. If both of the foregoing questions are answered in the affirmative, must the order or contract of employment place a limitation both upon the money compensation and the added allowance for medical and other attention?

"4. If the Harris County Navigation District Commissioners make an employment and designate a salary only for a position, am I authorized thereafter to approve payments for medical attention and other similar services above described, which are not authorized until after the performance of the services and without limitation of amount?"

As stated in your letter, it will be noted that the Harris County Navigation District was established by virtue of Section 52, Article III of the State Constitution and Chapter 8, Title 128, Vernon's Annotated Civil Statutes.

We have considered the opinions of Honorable D. A. Simmons, General Counsel for the Harris County Navigation District; Honorable Conrad J. Landrem, Assistant District Attorney; and Honorable Ernest A. Knipp, Attorney for Harris County, copies of which were attached to your inquiry. These opinions have aided us in reaching our conclusion in this opinion and we thank you for furnishing us with the same.

The Harris County Navigation District is a political subdivision of the State, exercising a part of the sovereign

Honorable H. L. Washburn, Page 5

powers of the State and is not simply a public or quasi public corporation like a common carrier or canal and dock corporations. Sustaining this proposition we cite the case of Durkhart vs. Brazos River Harbor Navigation District, 42 S. W. (2d) 96. Also the case of Carpenter vs. Arroyo-Colorado Navigation District of Cameron and Wilson Counties, 111 S. W. (2d) 322 and the authorities mentioned in those cases. Generally speaking navigation districts are essentially political subdivisions of the State. They are governmental agencies, bodies politic and corporate with the power to exercise the rights, privileges and powers conferred upon them by law. They are generally treated as municipal corporations in the sense that they are confined to definite geographical areas, and have no governmental powers outside of them and subject to the same rules as applied in arriving at the powers of counties and cities. Constitution of Texas, Article 16, Section 59; Trimmier vs. Carlton, 296 S. W. 1070; Fairless vs. Cameron County Water Improvement District, 25 S. W. (2d) 651, Bexar County vs. Medina-Atascosa Counties Water Improvement District vs. State, 21 S. W. (2d) 747.

It is a well established principle of law that the county commissioners' courts may exercise only such power as expressly or by necessary implication given to said courts by the Constitution and Statutes. This principle is so well established and there are so many authorities supporting the same, we deem it unnecessary to cite any of such authorities. Therefore, we think that a navigation district is subject to the rule that it must be authorized by statute, either expressly or by implication, to exercise any authority or power which it does exercise.

Articles 8227 and 8245, Vernon's Annotated Civil Statutes, authorize the commissioners of navigation districts to employ such assistant engineers and other employees as may be necessary, paying such compensation as they may determine, and that said commissioners are further authorized to employ counsel to represent such district in the preparation of any contract, or the conducting of any proceeding in or out of court, and to be the legal adviser of the commissioners on such terms and for such fees as may be agreed upon by them, and to employ such persons as they deem necessary for the construction, maintenance and operation, and development of the navigation district, its business, facilities, prescribe their duties and fix their compensation. However, there is no specific provision of the statutes which authorizes a navigation district to incur medical

645

expenses or employ a physician or physicians for the purposes
mentioned in your inquiry. In the case of Tri-City Fresh Water
Supply District No. II of Harris County vs. Mann, 142 S. W. (2d)
954, it was said:

"It is a general rule of judicial con-
struction that even a normal municipal cor-
poration has only such implied powers as are
reasonably necessary to make effective the
powers expressly granted. That is to say,
such as are indispensable to the declared
objects of the corporation and the accomplish-
ment of the purposes of its creation. Powers
which are not expressed and which are merely
convenient or useful may not be included and
cannot be maintained. Furthermore, where
powers are granted to a municipality by spe-
cific provision, such powers are not enlarged
by general language found elsewhere in the
Act. * * *."

In discussing this subject, it was said in the case of
Foster vs. City of Waco, 225 S. W. 1104, that "any fair, reason-
able, substantial doubt concerning the exercise of power is re-
solved by the courts against a corporation, and the power is
denied. Of every municipal corporation the charter or statute
by which it is created is an organic act. Neither the corpora-
tion nor its officers can do any act, or make any contract, or
incur any liability, not authorized thereby, or by some legisla-
tive act applicable thereto. All acts beyond the scope of the
powers granted are void. * * *."

There are several sections of the State Constitution
which evidence a desire and intention to give every possible
safeguard to the expenditure of public funds and to compel their
application to be properly expended for the purposes authorized
by law. (Article III, Sections 44, 49, 51, 52 and 53. Also see
the provisions of Article I, Section 3, Section 16; and Article
XVI, Section 6 of the Constitution.)

As above stated, the Harris County Navigation District
is a political subdivision of the State and certainly its funds
are public funds. Therefore the several provisions of the State
Constitution limiting the use of public funds by its political
subdivisions do, we think, apply to the Harris County Navigation

District.

The pension system of the City of Dallas, which had been adopted some years before the Legislature had authorized city pensions, was upheld in the case of Byrd vs. City of Dallas, 6 S. W. (2d) 738, and in considering several of the constitutional provisions mentioned above, it was held that they had no relation to a contract between a municipal corporation and its employees, but were intended to prevent the application of public funds to private purposes. The pension was held not to be a gratuity, but a part of the compensation of the employee for services rendered. Subsequently, in the case of City of Dallas vs. Trammel, 101 S. W. (2d) 1009, the rule as to the pensions were reiterated, but it was pointed out that the pensioner has no vested right in future installments and that the amounts payable may be increased or diminished.

The State by general law authorizes board, lodging, clothes and provisions in addition to salaries for employees of the Texas Prison System. (Acts of the 44th Legislature, Ch. 163, P. 413).

It is stated in the opinion of Mr. Simmons, mentioned above, that "the constitutional provisions of Georgia are similar to ours, and objections against a pension system for municipal employees in that State were overruled in the case of West vs. Trotzier, 196 S. E. 904, wherein it was held that city funds going into pensions did not constitute donations or extra compensation which were prohibited by the Constitution."

It is quite common for the State and the various subdivisions of the State government to agree to furnish, as part of the compensation of the employee, living quarters, groceries, automobiles, etc. We agree with the statement of Mr. Knipp as set forth in his opinion, heretofore mentioned, which reads in part as follows:

"* * *, it is quite common for the State and the various subdivisions of the State Government to agree to furnish, as a part of the compensation of the employee, living quarters, groceries, automobiles, and medical services. The Navigation District may do this also. But what I tried to make plain in my opinion, was that neither the Navigation District nor any other political subdivision of the State may pay to any employee any compensation, regardless of the form which that compensation may

take, after the rendition of services called
for by their contract of employment, unless
such compensation was prospectively provided
for by the contract. The point I tried to
stress was that the particular items covered
by my opinion were not part of any contract
of employment. Mr. Simmons' letter does not
say, and I am quite sure that he will not
say aside from the letter, that any depart-
ment of the State Government or any political
corporation organized as a part of the State
governmental machinery may give, deliver or
contribute to any agent or employee medical
services after performance of the services
for which that employee was engaged and
which are in the nature of a donation or
bonus to the employee, given or withheld
at the whim of the officer or governing
body of the political subdivision. It is
one thing to make a contract with an employee
for a fixed salary per month or per year plus
a definite amount of medical attention; but
it is distinctly another thing to make a
contract with an employee for a fixed salary
per month, and then say to that employee
that the political organization which em-
ploys you will give you such medical serv-
ices as it determines in its discretion to
give you, after you have rendered in whole
or in part these services and have been paid
for them. To make this clearer, I think that
the Navigation District could very reasonably
contract with Mary Smith to perform steno-
graphic services in the offices of the Port
Commission and agree to pay her a salary of
$100.00 per month, and in addition thereto,
to supply her such medical services and
hospitalization as were reasonably necessary
during the period of her employment not to
exceed the additional sum of $25.00 per month.
But I do not think that it has any authority
to contract with Mary Smith to perform such
services at a salary of $100.00 per month
without any mention being made of the care
or amount of medical services, and then after

the performance of the services covered by
the contract, either for a long or short
period, to grant Mary Smith extra compensa-
tion in an indeterminate amount, subject
alone to the arbitrary whim of the commis-
sioners, without some definite guide or
measure to be applied.

"* * *."

It is stated by Mr. Landram in his opinion, heretofore
mentioned:

"There must be a contract of employment
providing for these medical services with
maximum limits and also described, if not
in detail, yet by some reasonable standard
by which the County Auditor and the judiciary
may determine the limits and scope of the
obligations. If such reasonable standards
are not prescribed, the contract would doubt-
less be void for indefiniteness and unenforce-
able by the employee, making the expenditure
a gift for want of a valid contract, and the
County Auditor would have no standard by which
to determine from time to time whether a claim
filed by an executive officer for an employee
or by the employee himself fell within his
contract with the District. We must bear in
mind that if medical services are a part of
the agreed compensation the employee may claim
it as a matter of right and not of grace of
the District Employer, and may, therefore,
present his own claim direct, and, therefore,
the County Auditor must have a standard pre-
viously ascertained by law to determine the
validity of the claim. I do not mean to say
that the decision of the County Auditor on
the claim is final or conclusive or exempt
from judicial review."

It is our opinion that the medical service and hospital
facilities furnished employees of the Navigation District are
sustainable as a part of their earned compensation where the

Board has made general provisions therefor.  In other words, the Navigation District has authority to agree, as part of the agreed compensation to be paid employees, to furnish stipulated services for hospitalization, drugs and medical attention.  However, these cannot be unlimited in amount or kind, and must, therefore, be for some reasonable fixed maximum amount.

Specifically answering your questions as stated above, it is our opinion that the first three questions should be answered in the affirmative and are so answered.  The fourth question is answered in the negative.

Trusting that the foregoing fully answers your inquiry, we are

APPROVED DEC 9, 1941

Yours very truly

ATTORNEY GENERAL OF TEXAS

By _Ardell Williams_

Ardell Williams
Assistant.

AW:RS



APPROVED
OPINION
COMMITTEE
BY _BWB_
CHAIRMAN